## Adam Keck, Plaintiff in Error, v. George Pfeil, Defendant in Error.

1. CONTRACTS—*failure to perform.* Where plaintiff is discharged because of his refusal to continue with a contract unless an advance is given to which he is not entitled, he can only claim the money earned and not profits for the work to be performed.

2. EVIDENCE—*profits.* In action by. one who alleges that he was wrongfully prevented from performing a contract to sink a shaft, testimony of the person who completed the shaft as to the expense of completing it, and as to the profit which would have accrued to plaintiff should be admitted for the defendant, where it is doubtful whether the plaintiff is entitled to any profits, and where such plaintiff introduced evidence of the expense of completing the shaft, and as to the profits therefrom.

3. INSTRUCTIONS—*summarizing case.* Where in an action for money alleged to be due under a contract for sinking a shaft, there is evidence tending to show that plaintiff was discharged from performance because of refusal to continue unless advances were made, and that plaintiff was unable to complete the work, an instruction is vicious which attempts to summarize the elements essential to recovery but omits the elements of refusal to continue and the inability to complete the work.

*Assumpsit.* Error to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1912. Reversed and remanded. Opinion filed June 27, 1912.

JAMES O. MILLER, for plaintiff in error.

H. E. SCHAUMLEFFEL and LOUIS P. ZERWICK, for defendant in error.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Upon the trial of this case in the court below judgment was rendered against plaintiff in error for $950.00, and costs of suit, and he seeks by this appeal to reverse the judgment. This suit arose out of a written contract entered into between defendant in

error and plaintiff in error, whereby it was provided, among other things, that defendant in error was to furnish engine, tools, drums, ropes, explosives and all other articles and instruments and labor necessary, and to sink in a faithful and workman-like manner a verticle mining shaft on the premises of plaintiff in error and to develop such shaft to a vein of coal at approximately one hundred sixty feet from the surface and to be walled, lined and timbered with such character and kind of timber, and in the manner and style as plaintiff in error should direct, as the shaft was being sunk. Defendant in error further agreeing not to remove from such shaft or premises any material, tools, engine, instruments, appliances or articles of any kind used in the sinking of the shaft until the timbering had been entirely completed and accepted by plaintiff in error; for the faithful performance of such work plaintiff in error agreed to pay defendant in error $1,760.00, more or less, depending upon the actual number of feet the said shaft is sunk, to be determined by actual measurement, and was to pay defendant in error $5.25 per foot until the shaft had been sunk and lined to the underlying stratum of rock and after reaching the rock he was to be paid $9.00 per foot, payments to be made each Saturday night during the progress of the work, and the remainder to be paid when the shaft was entirely completed and accepted, it being understood that the plaintiff in error was to pay no more than eleven dollars per foot for the total number of feet of said shaft; the plaintiff in error was to furnish all necessary lumber for timbering the shaft.

The declaration consists of two special counts, and the common counts, to which the defendant filed the general issue and gave notice thereunder that he would set-off certain claims therein specified against the plaintiff's demand. The declaration after setting out the agreement, alleges that the plaintiff on April 20, 1910, began the work of sinking a shaft under said agreement and furnished the tools, etc., required by

him to be furnished, and sank the shaft to the depth of one hundred two feet, and that he performed the work in a faithful and workman-like manner in pursuance of said agreement and has always been ready and willing to complete the whole of said work but that the defendant did not nor would not make the payment or payments by the said agreement required, and would not permit the plaintiff to further proceed with or complete said work but refused wholly so to do, and on the 6th of July wrongfully and absolutely discharged, hindered and prevented the plaintiff from performing the residue of the work, and that by reason thereof the plaintiff has lost and been deprived of great gains and profits which would have accrued to him from the completion of the work and the price and value of the work performed by him.

The evidence in this case discloses that defendant in error entered upon the work of sinking the shaft in question and caused the shaft to be sunk to a depth of about one hundred two feet and that plaintiff in error made the weekly payments as provided in the contract, up to the week ending July 2nd, at which time plaintiff in error refused to pay the defendant in error for that week for the reason, as he claimed, that the shaft was not plumb, and that he would not pay until it had been straightened according to contract. There was no dispute between them as to the shaft not being straight and out of plumb for about the distance of fourteen or fifteen feet from the bottom, but defendant in error claimed that he sank it straight but it became out of plumb because of the weak and insufficient lumber that plaintiff in error had furnished to line the shaft with; that defendant in error undertook to straighten the shaft and removed two rings for that purpose and claims that there was so much clay and sand mixed with the water that the "whole business was on a move from water and sand." Plaintiff in error brought a Mr. Jacques to look at the shaft and defendant in error says he was willing

to employ Jacques to see that the work of straightening the shaft was properly done but defendant in error said he needed some money to pay the men and claimed that plaintiff in error was in arrears forty-two dollars but plaintiff in error refused to pay him any more money until the shaft was straightened. At this point a dispute arose about the payment of the sum of money. Defendant in error was claiming that there was forty-two dollars due him and that he wanted one hundred twenty-two dollars to pay his men and says that when he demanded one hundred twenty-two dollars and plaintiff in error refused to pay it defendant in error claims he then said to plaintiff in error, ''What shall I do, I cannot get the money.'' Plaintiff in error told him to borrow some money and defendant in error replied that he could not do that, and plaintiff in error said, ''You can quit.'' And again, he says that he said to plaintiff in error, ''What shall I do, I cannot get the money,'' and plaintiff in error says, ''You can quit;'' ''so I threw up the sponge.'' Plaintiff in error in his examination says that on June 30th he told defendant in error, ''You are out of line, you are digging the shaft crooked;'' ''he said he could fix it, he could straighten it;'' that he worked on July 5th and 6th trying to straighten it and then went away. That on the morning of July 7th defendant in error came out and stood around the shaft and said he wanted $122.00 to pay his hands if he didn't get that he won't work any more;'' and then he went and got his battery, boxes and went away. Adam Keck, a son of plaintiff in error, also testified, that when defendant in error requested $122.00 plaintiff in error said he would not pay it until the shaft was straightened and that defendant in error then said, ''Well I cannot work any more if I don't get any money any more to pay my laborers,'' and that he, defendant in error, then left. John Pfeil, son of defendant in error, also says that when they were having trouble about the planks breaking plaintiff in error says, ''You have to fix that right;

father said he didn't have no more money; father could not fix it because he had used up all his money and Keck had refused to pay the Saturday night before. I heard him tell father to quit." Wm. Glen also testified that "he heard defendant in error on the 6th or 7th say he wanted $120.00 or $122.00, something along there. Keck told him he would not pay him until he straightened the shaft. Pfeil said he would not go on unless he had that amount of money." Joe Ehrstein also testified that he was there on July 7th, "heard Mr. Pfeil ask Mr. Keck for some money, said he could not go any further unless he got some money; Mr. Keck said the shaft was not the way the contract reads. I heard Mr. Pfeil ask Mr. Keck for $120.00; Keck said he would pay if the shaft was straightened out. Pfeil said if he got $120.00 he would straighten it as he must have the money to pay his men." This was substantially all of the testimony upon this question.

It is apparent from the testimony in this record that the principal thing which led up to defendant's in error quitting was the refusal of plaintiff in error to pay the money out before the shaft was straightened and to advance the $122.00. At all events this question was of such prominence, and apparently had so much to do with defendant's in error quitting that in the instructions it should not have been ignored. It may be true that from this language it would appear that plaintiff in error discharged the defendant in error, but why? It was because defendant in error had said that he would not go on with the work unless plaintiff in error would pay this money, and plaintiff in error then told him that he could quit. Certainly this would be a discharge but on account of defendant in error exacting of plaintiff in error more than his contract provided for; if the discharge was brought about in this manner or for this reason then all that defendant in error could claim would be the money that he had earned and could not claim the profits upon

the work that he had not performed, and as this evidence would indicate, was not able to perform.

The third instruction given for defendant in error is as follows: "The court instructs the jury that if you believe from the preponderance of the evidence in this case that the plaintiff and the defendant executed the contract read in evidence in this case, and that the plaintiff began work under the same and completed a part of the work provided to be done under it, and that the same was done in a workman-like manner and in compliance with the provisions of said contract, and that the said work was accepted by the defendant and that the defendant refused to make the payments required by the terms of said contract and that he discharged the plaintiff and hindered and prevented him from completing the balance of the work; and if you further believe from a preponderance of the evidence that the plaintiff would have derived a profit from the completion of such contract, then the plaintiff is entitled to recover of the defendant for loss of such profits, if any such are shown by the evidence." Even if the plaintiff had performed the work in compliance with the contract and defendant refused to make payments, still if plaintiff in error discharged defendant in error because defendant in error refused to go on with the contract unless he would advance him more money, then defendant in error would not be entitled to profits. This instruction also eliminates the question of the ability of defendant in error to complete the contract, and the evidence at best certainly indicates his inability to complete the work; if he was not able to complete the work according to the terms of the contract then he was not entitled to the profits of the uncompleted work. This instruction is vicious because it attempts to summarize the facts or elements essential to a recovery and omits the important matters above referred to. City of Chicago v. Schmidt, 107 Ill. 186; Terre Haute & Ind. R. R. v. Eggmann, 159 Ill. 550.

The declaration charges that he was ready to complete the contract according to its terms. We think in view of the fact that the preponderance of the evidence shows that the principal cause of defendant's in error failure to proceed with the work was on account of plaintiff's in error refusal to advance the money as requested, that it was error to give this instruction in the form it was given, especially as it directed a verdict for profits without in a proper manner recognizing the points above suggested.

Again, defendant in error in his testimony in chief, stated that he could have finished the work in twenty-six days at an expense of $10.35 per day and this statement was made for the purpose of showing that the profit of defendant in error in the uncompleted work would amount to about $391.90. Plaintiff in error in his testimony offered to show by Ellis Taylor, the man who completed the shaft, the amount of profit that plaintiff could have derived from the completion of the shaft and asked the following questions of Taylor:

"Q. What do you say as to the profit to be made down to 102 feet or lower than that? Where is the most profit?

Q. Which is the less expensive to sink, down 102 feet or from 102 feet on down to 160 feet?

Q. What would you say as to that expense of $10.45 a day for sinking the shaft from 102 feet to 160 feet?"

To all of which questions objections were made and sustained by the court. We think that the witness should have been permitted to answer these questions for the purpose of obtaining plaintiff's in error version of any profits that might have been obtained by plaintiff. The verdict in this case included profits to the amount of $363.50 and in view of the fact that it is exceedingly doubtful if defendant in error is entitled to recover profits at all under the evidence contained in this record, it was at least highly important that the instructions should have been accurate so far as they

bore upon this question, and plaintiff in error should have been permitted to introduce his testimony in reduction of such profits.

For the reasons above indicated we think the court should have granted a new trial in this case, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*